James J. SINGER, et al., Plaintiffs,

v.

The BLACK & DECKER CORPORATION, et al., Defendants.

Civ. No. MJG–87–1047.

United States District Court, D. Maryland.

June 12, 1991.

Frederick H. Stalfort, Hampstead, Md., Lawrence A. Melfa, Howard, Butler & Melfa, Towson, Md., Charles Lee Nutt, Clements & Nutt and W. Michael Pierson, Baltimore, Md., for plaintiffs.

K. Donald Proctor and Virginia W. Barnhart, Miles & Stockbridge, Towson, Md., for defendants.

## DECISION

GARBIS, District Judge.

Plaintiffs, employees of the Black & Decker Corporation, bring this action against the Black & Decker Corporation, Black & Decker (U.S.) Inc., and Black and Decker, Inc.,[1] the Plaintiffs' employer, and against eight members of the Pension Committee which administers the Black & Decker Retirement Plan (hereinafter "the Plan"). Pursuant to Fed.R.Civ.P. 23, Plaintiffs seek to sue as a class comprised of themselves and all similarly situated employees of Black & Decker who have been employed with the corporation for at least 30 years and/or who are at least 55 years of age, and who have been or will be termi-

---

1. For convenience these entities will hereinafter be collectively referred to as "Black & Decker."

nated as a result of reductions in force at the Defendants' Hampstead facility.[2]

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6). Because matters outside the pleadings were presented to the Court the parties have been permitted to supplement the record with Rule 56 materials pursuant to Rule 12(b). Accordingly, with the parties' supplemental materials before it, the Court will treat the Defendants' Motion to Dismiss as a motion for summary judgement. The Court has considered the memoranda and evidence submitted by the parties and arguments of counsel at the hearing.

FACTUAL BACKGROUND

Black & Decker sponsors the Black & Decker Retirement Plan, an employee benefits plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* In order to remain more competitive in the market, in 1981 Black & Decker scaled down their operations and reduced the size of their work force at several of their locations, including the Hampstead location where Plaintiffs were employed. To ease the economic effect of the reduction in force on its long time employees, Black & Decker amended the Plan to allow qualified employees to receive early retirement benefits under a program entitled the "1981 Special Retirement Program." In essence, the early retirement program, *on a one time basis*, allowed qualified employees to retire with the same benefits as if they were age 62. According to the Plan, in order to qualify for the 1981 Special Retirement Program, an employee had to be a participant

> with five or more years of Service ... who is at least 58 years old on or before July 1, 1981 and who retires during the 1981 Special Retirement Period....

*See* Plan Article XV, § 15.1. Employees age 62 and older were offered a special lump sum payment. The term "Special Retirement Period" was defined under the Plan as "the period beginning April 1, 1981 and ending on July 1, 1981, inclusive." *Id.*

Black and Decker did nothing to justify a belief on the part of anyone that it was committed to amending the plan further to establish, in the future, another early retirement program. Indeed, it stated in its announcements that,

> [T]he company is offering to a *qualified segment* of its employees a Special Retirement Program *for a temporary period.* The Program may be attractive to those employees who would like to retire in the near future.... *To be eligible to participate in this program you must choose to retire between April 1, 1981 and July 1, 1981, which we call the "Special Retirement Program Period."* (emphasis added).

*See* Exhibit A to Plaintiffs' Original Complaint. In bold print at the end of the announcement was the statement: **"AFTER JULY 1, 1981, THIS SPECIAL RETIREMENT PROGRAM WILL NO LONGER BE OFFERED."** *Id.*

In 1983, further reductions in force at the Hampstead location were deemed necessary and Black & Decker again amended the Plan to offer a similar early retirement program known as the "1983 Special Early Retirement Program." The 1983 program was limited to

> [a]ctive participant[s] with five or more Years of Service ... who [are] at least 58 years old on or before October 1, 1983 and who retire during the 1983 Special Retirement Period.

*See* Plan Article XVI, 16.1. The 1983 "Special Retirement Period" was defined as the "period beginning July 1, 1983 and ending on October 1, 1983, inclusive."

Again, Black and Decker took no action justifying any remaining employee to believe that it was committed to amending the plan again to establish a third early retirement program. Once more, Black & Decker stated in its announcements that early retirement benefits were available to a qualified group of employees electing to retire within a limited time frame. The letter announcing the 1983 Special Retirement Program contained relevant language

---

**2.** Plaintiffs are not at this time certified by the Court as a class pursuant to Fed.R.Civ.P. 23.

identical to that contained in the 1981 announcement except for the eligibility dates. The 1983 announcement likewise, in bold print, provided that **"AFTER OCTOBER 1, 1983, THIS RETIREMENT PROGRAM WILL NO LONGER BE OFFERED."** *See* Exhibit "B" to Plaintiffs' Original Complaint.

In addition to work force reductions, in 1983 Black & Decker sought to enhance their competitiveness by installing an upgraded production process at its Hampstead plant. Evidently Black & Decker's efforts were to no avail. In 1985 Black & Decker decided to close its Hampstead facility, a process that resulted in a gradual elimination of jobs at the facility. Along with other assistance, employees whose jobs were eliminated were granted one week's severance pay for each year that they had been employed with Black & Decker. Although they cannot locate any copy, and can offer no evidence of its particular terms (except to say that it was "similar to the 1981 and 1983 offers"), Plaintiffs contend that for one week in May of 1985 a notice was posted at the Hampstead plant offering a 1985 "Special Retirement Program." Defendants deny that any such offer of early retirement was made in 1985 or posted at the Hampstead facility. Putting aside the effect of Defendants' denial of any posting of a notice, the evidence is absolutely clear that the Plan was not amended to establish any 1985 Special Retirement Program and there is no evidence whatsoever to support its existence other than the allegation that a notice was posted for a week. In any event, beginning in 1985, Black & Decker began terminating the employment of those working at the Hampstead facility and closed the operation. No terminated employee was given, or offered, any early retirement benefit, although all were given as a "termination bonus" one week's severance pay for each year of service.

Plaintiffs have filed a five count complaint against Black & Decker and the Pension Committee defendants. Count I of the Second Amended Complaint alleges breach of contract by Defendants. According to Plaintiffs, the implicit effect of the 1981 and 1983 early retirement offerings, was to make extension of early retirement benefits a "term and condition" of Plaintiffs' employment contract with Black & Decker.

Count II states a claim for benefits based on promissory estoppel. The 1981 and 1983 special early retirement programs are characterized by Plaintiffs as inducements to Plaintiffs to continue their employment with Black & Decker. Plaintiffs contend that it was reasonable for them to rely upon Black & Decker's alleged inducement, and that they continued their employment with Black & Decker, rather than seeking employment elsewhere, on the assumption that they would receive early retirement benefits if they were eventually terminated.

Count III states a claim for benefits based on quasi contract or equitable estoppel. In Count III Plaintiffs allege that extension of early retirement benefits in 1981 and 1983 and the implementation of the plant modernization program in 1981 deceptively misled Plaintiffs into the justifiable expectation that special early retirement benefits would be offered to all employees who remained with Black & Decker but were later terminated by reductions in force. Plaintiffs contend that Defendants are now estopped from denying them benefits in light of their justifiable reliance on the implications of Black & Decker's conduct, which caused them to forego seeking other employment.

Count IV alleges entitlement to benefits resulting from an implied amendment to the terms of the Plan. Count V seeks damages arising from an alleged breach of fiduciary duty by Defendants in administering the Plan.

Plaintiffs seek a declaratory judgment that they are entitled to early retirement benefits, an injunction requiring Defendants to grant early retirement benefits to any similarly situated employee terminated by future reductions in force, as well as compensatory damages and attorney's fees. The Court finds no merit to Plaintiff's claims and must grant summary judgement in Defendants' favor.

## SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that

[summary judgment] must be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As stated by the Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986):

[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

The standard used by the Court mirrors the directed verdict standard under Fed. R.Civ.P. 50, *i.e.,* whether there is not just a scintilla of evidence, but enough that a reasonable jury properly could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Of course, when considering the motion, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 106 S.Ct. at 2513. *See also Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970). But, as provided in Rule 56(e):

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

■ Finally, in evaluating any motion for summary judgment, the Court must bear in mind the Supreme Court's statement in *Celotex* that

Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex,* 106 S.Ct. at 2555.

## SUBSTANTIVE LAW

■ Section 514(a) of ERISA provides that ERISA preempts "any and all State laws insofar as they now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The term "State laws" encompasses common law causes of action relating to employee benefit plans. *See e.g. Holland v. Burlington Industries, Inc.,* 772 F.2d 1140, 1147 (4th Cir.1985). The Supreme Court has held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). "[T]he phrase 'relate to' has been read expansively, 'giving unparalleled breadth' to the preemption provision." *Pizlo v. Bethlehem Steel Corporation,* 884 F.2d 116, 120 (4th Cir.1989) (*quoting Salomon v. Transamerica Occidental Life Ins. Co.,* 801 F.2d 659, 661 (4th Cir. 1986)). The Fourth Circuit in *Holland v. Burlington Industries, Inc.,* 772 F.2d 1140, 1146–47 (4th Cir.1985) held that claims for ERISA-plan benefits based upon breach of contract and estoppel "relate to" employee benefit plans and, therefore, are preempted by ERISA.[3]

---

**3.** *Lee v. E.I. DuPont de Nemours and Co.,* 894 F.2d 755 (5th Cir.1990) and *Cefalu v. B.F. Good-*

Plaintiffs in the case at Bar concede that they seek "benefits due under the terms of the plan, to enforce plaintiffs' rights under the terms of the plan or to clarify their rights to future benefits under the terms of the plan." Insofar as Counts I–III seek recovery of plan benefits based on state common law remedies (breach of contract, quasi contract, promissory estoppel) these claims are preempted and thus, as a matter of law, cannot withstand summary judgment.[4]

In an effort to avoid ERISA's preemptive effect, Plaintiffs assert that Counts I–III, although not based on any express remedy contained in ERISA, nonetheless are cognizable under the "federal common law of ERISA," and thus are not preempted. In short, Plaintiffs assert that while Congress may have intended to preempt state common law claims for benefits, it did not intend to prevent federal courts from developing federal common law remedies mirroring the preempted state causes of action. Thus, Plaintiffs argue that although Counts I–III, alleging

breach of contract and estoppel,[5] would ordinarily constitute state law claims, because the recovery sought here is ERISA plan benefits, these counts are cognizable as federal claims arising under ERISA.[6]

Although this Court does not question the existence of federal common law under ERISA, *see Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir. 1990), it is not convinced that Congress intended, on the one hand, to prevent courts from entertaining state contract and estoppel claims, while at the same time allowing substantially identical claims to exist as federal common law. The same concerns that underlie preemption of state common law claims for ERISA-plan benefits are equally relevant to Plaintiffs' asserted federal common law claims. The Fourth Circuit addressing the policies underlying ERISA preemption of state common law claims has stated,

> Preemption applies to a state cause of action under common law as well, for the state breach of contract and estoppel claims pose the same potential as the

*rich Co.,* 871 F.2d 1290 (5th Cir.1989) are also instructive on this point.

4. Earlier, Plaintiffs argued to this Court in their motion to remand that their claims were not governed by ERISA because they did not seek recovery of benefits from an *existing* plan. Judge Ramsey, to whom this case was previously assigned, rejected this argument. The Court is not certain whether Plaintiffs still contend that there is any legal significance, in terms of preemption analysis, to the distinction between claims seeking benefits under existing plan provisions and claims seeking to compel establishment of new plan provisions. In any event, the Court agrees with the view of the Fifth Circuit contained in *Lee v. E.I. DuPont de Nemours and Co.,* 894 F.2d 755, 758 (5th Cir.1990), where the Court refused to distinguish for purposes of preemption between claims seeking benefits under existing plan provisions and claims relating to benefits that will be provided for in a future amendment.

5. The Court is unsure but believes that Count IV may be based in part on estoppel theory.

6. One aspect of Plaintiffs' attempt to transmogrify Counts I–III into federal claims arising under ERISA is rooted in the removal of these claims from state court to this forum. Plaintiff argues that removal to a federal court transformed what was previously a suit based on

state common law theories into a federal ERISA enforcement action arising under ERISA common law.

This argument is flawed from a procedural standpoint in that the removal statute is a purely procedural device that can add nothing to the substantive validity of the claims removed. Plaintiffs can not evade the necessity of stating a recognized federal cause of action under ERISA. They can not "federalize" their claims merely by removal to a federal court.

Plaintiffs' reliance on Judge Ramsey's Order permitting removal and his subsequent denial of Plaintiffs' Motion to Remand to support their contention is misplaced. Judge Ramsey expressly found that, on its face, Plaintiffs' complaint alleged state law claims. Determining, however, that the "real nature" of the complaint was federal inasmuch as Plaintiffs' sought pension benefits from an ERISA plan, the Court allowed the case to be removed to, and remain in, this forum. In other words, Judge Ramsey concluded that ERISA's preemptive force requires that any claim for benefits from an ERISA plan must be brought pursuant to an ERISA enforcement provision and thus, necessarily, if it is to be cognizable at all, must arise under federal law. There is nothing in Judge Ramsey's opinion, however, nor in the relevant law, that operates to transform state common law claims for plan benefits into claims arising under ERISA.

statutory cause of action for *conflicting employer obligations and variable standards of recovery.* As in *Gilbert* [*Gilbert v. Burlington Industries, Inc.,* 765 F.2d 320 (2d Cir.1985)], "the state law claims ... *would determine whether any benefits are paid, and directly affect the administration of benefits under the plan."*

*Pizlo* at 120 (emphasis in original) (quoting *Holland v. Burlington Industries Inc.,* 772 F.2d 1140 (4th Cir.1985)). As noted, what Plaintiffs seek are plan benefits. Obviously then, the remedy Plaintiffs ask this court to apply would "determine whether any benefits are paid," and "directly affect the administration of benefits under the [P]lan" as much as would any state contract claim. The prospect for conflicting employer obligations engendered by a federal common law remedy, versus an equivalent state common law remedy, would be reduced only to the extent that there are fewer federal circuits than there are states. Were the Court to adopt Plaintiffs' argument, Congress' aim of assuring uniform application of ERISA by the Courts, *see Holland* at 1147, would be frustrated by the inevitable varying interpretations of the scope of ERISA remedies inherent in the evolution of any judicially fashioned remedy.[7]

In any event, although some circuits have recognized a federal common law estoppel remedy that allows plaintiffs to recover ERISA plan benefits in the absence of claims premised on express ERISA remedies, *see Black v. TIC Investment Corp.,* 900 F.2d 112, 114–15 (7th Cir.1990) (and cases therein), the Fourth Circuit has not. The Fourth Circuit has endorsed the view adopted by the Eleventh Circuit in *Nachwalter v. Christie,* 805 F.2d 956 (11th Cir.1986), and refused to create a federal common law estoppel remedy under ERISA. *See Pizlo* at 120. In *Nachwalter* the Court rejected the argument that Congress intended Courts to create federal

common law ERISA remedies in the following terms:

The claim that Congress intended for the federal courts to create a body of federal common law to govern ERISA cases does not, as appellant suggests, give a federal court *carte blanche* authority to apply any prevailing state common law doctrine it chooses to ERISA cases. A federal court may create federal common law based on a federal statutes's preemption of an area only where the federal statute does not expressly address the issue before the court. Furthermore, even when it is appropriate for a federal court to create federal common law, it may use state common law as the basis of the federal common law only if the state law is consistent with the policies underlying the statute in question; federal courts may not use state common law to re-write a federal statute.

Applying these principles, we conclude that we cannot create federal common law in this case because ERISA specifically addresses the issue before this court. *ERISA expressly requires that employee benefit plans be "established and maintained pursuant to a written instrument."* ... *[T]his requirement that ERISA plans be "maintained" in writing precludes oral modifications of the Plan; the common law doctrine of estoppel cannot be used to alter this result.*

*Nachwalter* at 959–60 (emphasis added) (citation omitted).

Although the facts of the two cases differ, the *Nachwalter* holding is equally applicable to the claims raised in the case at bar. With the possible exception of a notice of an early retirement benefit allegedly posted on a bulletin board at the Hampstead facility, nowhere in Counts I–III do Plaintiffs allege that they are relying upon any writing. Rather, the claims in this case rest upon the alleged implications of the Defendants' conduct and the legal ef-

---

7. In another the context the Fourth Circuit has warned of the threat that "an unpredictable medley of jury determinations" poses to areas that Congress has statutorily preempted in a "quest for national uniformity." *Rayner v.*

*Smirl,* 873 F.2d 60, 66 (4th Cir.1989) (commenting on Congress' preemption of common law actions by the Federal Railroad Safety Act, 45 U.S.C. §§ 421–44).

fect of the Plaintiffs' reliance thereon. Absent reliance upon written plan provisions, Plaintiffs cannot sustain their claims for benefits stated in Counts I–III.[8]

■ In Count IV Plaintiffs allege entitlement to early retirement benefits based upon an amendment to the Plan. To the extent Count IV seeks recovery based upon an alleged ERISA plan provision, this count differs from Counts I–III, where there was no contention that the terms of the Plan were the basis of recovery. Plaintiffs, however, do not even allege (much less present evidence) that the Plan was amended in writing. Consequently, Count IV must also be dismissed under the reasoning of *Nachwalter, supra,* which prevents recovery based on unwritten plan amendments. *See Pizlo* at 120; 29 U.S.C. § 1102(a)(1) and (b)(3).

■ Plaintiffs have mentioned that a notice offering early retirement benefits was allegedly posted on a company bulletin board. The Court is not sure whether Plaintiffs allege that this notice constitutes a written plan amendment, but even if they so allege, Count IV could not be sustained on this basis. Modifications to ERISA benefit plans can only be accomplished by *formal* written amendments made in accordance with the provisions specified in the plan for amendment. *Nachwalter* at 960. Alleged modifications based upon informal written agreements are unenforceable. *Johnson v. Central States, Southeast and Southwest Areas Pension Funds,* 513 F.2d

1173, 1174–75 (10th Cir.1975). Plaintiffs do not maintain (and certainly do not establish) that the alleged posted notice was a formal plan amendment, or even that it was notice that a formal plan amendment had occurred. Summary judgment must, therefore, be granted in favor of Defendants on Count IV.

■ In Count V Plaintiffs allege that Defendants breached their fiduciary duty under the Plan by "failing and refusing to extend [early retirement] benefits to persons whose employment is terminated due to reduction in force. . . ." In their opposition to Defendants' motion to dismiss, Plaintiffs explain that the crux of Count V is not Defendants' failure to offer Plaintiffs early retirement benefits; rather the breach of fiduciary duty by Defendants consists of their misrepresentations to Black & Decker employees concerning the availability of early retirement benefits.[9]

Misleading misrepresentations made to Plan participants regarding Plan benefits may in some circumstances give rise to a cause of action for breach of fiduciary duty. *See Berlin v. Michigan Bell Telephone Co.,* 858 F.2d 1154 (6th Cir.1988). Nonetheless, Count V cannot survive summary judgment inasmuch as Plaintiffs have failed to allege misrepresentation in their complaint at all, or to present any allegation (much less evidence) with sufficient specificity to enable the Court to determine

---

**8.** The Court notes that even if Counts I–III were not preempted, it is unlikely they could survive summary judgement on their merits. The Court simply cannot fathom how any reasonable juror could find in the 1981 and 1983 early retirement offerings an implied promise to offer early retirement benefits to all future employees affected by reductions in force. The terms of eligibility for the early retirement offerings are unambiguous—clearly stating that eligibility is limited to those who retire within the specified time period or "window." Without more, the 1981 and 1983 early retirement offerings are simply insufficient to rise to the level of a contractual promise as is alleged in Count I. Nor does the Court believe that one could find in the 1981 and 1983 offerings a basis for justifiable reliance that early retirement benefits would be offered in perpetuity to all future employees

terminated by reductions in force, as is alleged in Counts II and III.

**9.** If Plaintiffs' were arguing that the Defendants' failure to offer early retirement benefits was a breach of fiduciary duty they would be unsuccessful. The Fourth Circuit has determined that employers and plan administrators have no fiduciary obligation to continue unfunded early retirement benefits, as these have not yet accrued to the beneficiaries and thus are not nonforfeitable benefits. *See Sejman v. Warner–Lambert Co., Inc.,* 889 F.2d 1346, 1348–49 (4th Cir.1989); *Sutton v. Weirton Steel Div. of National Steel Corp.,* 724 F.2d 406, 410 (4th Cir. 1983). If the elimination or reduction of unaccrued contingent benefits is a nonfiduciary act, the decision not to offer such benefits must likewise be nonfiduciary.

the merits of the claim.[10]  In the context of this motion, vague allegations, made outside the complaint, are insufficient to withstand summary judgment.  Here, there is nothing to indicate that any misrepresentations were made.  Accordingly Count V must be dismissed.

For the foregoing reasons Defendants' Motion for Dismissal is deemed to be a Motion for Summary Judgment and is hereby GRANTED.

10.  If the asserted breach of fiduciary duty consists of nothing more than the alleged implications arising from the 1981 and 1983 early retirement offerings, it is clear to the Court that these earlier offerings, alone, do not amount to a misrepresentation by Plan fiduciaries to Plan participants.