**In the Matter of INTERCO INCORPORATED, et al., Debtors.**

**In re SENACK SHOES, INC.**

**SENACK SHOES, INC., Movant,**

v.

**Howard MISCHEL, (Claimant–Objection No. 26), Respondent.**

**Joint Admin. No. 91–40442–172. Bankruptcy No. 91–40471–172. Motion No. Z–118.**

United States Bankruptcy Court, E.D. Missouri, E.D.

May 12, 1992.

See also 139 B.R. 224.

Bryan, Cave, McPheeters & McRoberts, Gregory D. Willard, Lloyd A. Palans, John C. Boyle, Carl J. Spector, St. Louis, Mo., for debtors-in-possession.

Andrew M. Dewey, Fazzano & Tomasiewicz, Hartford, Conn., for Howard Mischel.

## MEMORANDUM

JAMES J. BARTA, Bankruptcy Judge.

This Order addresses Debtor's Motion for Summary Judgment (Z–118), filed in connection with the Debtor's Claim Objection No. 26.

This is a core proceeding pursuant to Section 157(b)(2)(B) of Title 28 of the United States Code. The Court has jurisdiction over the parties and this matter pursuant to 28 U.S.C. §§ 151, 157 and 1334, and Rule 29 of the Local Rules of the United States District Court for the Eastern District of Missouri.

### I. Background

On January 24, 1991, Interco Incorporated ("Interco") and thirty affiliated entities, including Senack Shoes, Inc. ("Debtor" or "Senack"), filed for relief under Chapter 11 of the United States Bankruptcy Code. The Debtors' Chapter 11 cases are being jointly administered for procedural purposes, pursuant to a January 25, 1991 Order of this Court.

The Debtors are continuing in possession of their property and are operating and managing their businesses as debtors-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

On March 27, 1991, Claimant Howard Mischel filed a proof of claim against Senack Shoes, Inc. in the amount of $350,-000.00.[1] On November 4, 1991, Debtor filed an objection to the proof of claim. Claimant filed a response to the objection and, after pretrial discovery, Debtor filed a motion for summary judgment. Both parties submitted affidavits and legal memoranda, and this Court heard oral argument on April 16, 1992. On consideration of the arguments of counsel, and the record as a whole, this Court makes the following findings of fact and conclusions of law.

---

1. Although this claim is based on a non-bankruptcy lawsuit against both Interco and Senack, Claimant filed a proof of claim against Senack only.

## II. The Underlying Litigation

### A. *Factual Background*

#### 1. Claimant's Assertions

Mr. Mischel became employed by Interco in 1960, and became employed by Senack in about 1967. Affidavit of Howard Mischel, p. 2, filed April 9, 1992, with Claimant's Memorandum of Law In Opposition to Debtor's Motion For Summary Judgment. In 1976, he was employed by Interco and Senack in Buffalo, New York at the Satler's Department Store chain. *Id.* In his affidavit, Mr. Mischel testified that while he was so employed, he had received a letter dated June 15, 1976 from Jack Spewak, President of Senack. *Id.* A copy of this letter is attached to Mr. Mischel's affidavit as Exhibit A.

The letter from Mr. Spewak states:

When you were in the office on previous occasions I spoke with you about my desire to put you on the Interco Executive Pension Plan. I finally was able to swing the deal and you are becoming a member of the Plan effective July 1st.... This as you know is a tremendous plan and really gives you very strong pension benefits that are perhaps the best that I have ever seen. It is the same plan that myself and all of the top Interco executives are on. You will receive information regarding the plan in a booklet form at a later date.

The letter also requested Mr. Mischel to keep the matter "confidential as this plan is only available to our top level executives."

Claimant testified in his affidavit that he received another letter from Mr. Spewak, dated June 23, 1976. This letter is attached to his affidavit as Exhibit B. The second letter states:

You will be sent information regarding the Executive Pension Plan at a later date as new pamphlets on the changes are in the process of being prepared. In the meantime I am also sure you can chat with Bob Kemper when you are here in St. Louis to find all of the full benefits, which are many that you will be receiving under this plan.

Claimant testified in his affidavit "[t]hat subsequent to June of 1976 in or about November of 1976 or February of 1977 I inquired of Bob Kemper ... as to whether or not the previous representations made to me regarding my retirement status and benefits were true and accurate and I was assured that they were by Bob Kemper." [2] Mischel Affidavit at 3.

At his deposition, Claimant testified he received "the one and only retirement plan booklet" in 1981. Deposition of Howard Mischel, p. 58, attached as Exhibit A to Claimant's Memorandum of Law In Opposition to Motion For Summary Judgment, filed April 9, 1992. He further testified that in June of 1981, "because of [his] inability to defer [sic] what was in the book and what was expected ..." he scheduled another meeting with Bob Kemper. Claimant then met with Mr. Kemper in St. Louis and, according to Claimant, discussed his retirement benefits. *Id.* at 58–59. Claimant testified he had no further conversations concerning the substance of his pension plan with anyone at Senack from June, 1981 until October of 1989. *Id.* at 60. However, he testified that he had a discussion about pension benefits "in general" with another individual at Senack, in which he was told that "between the retirement program and the stock options, anybody leaving this company retiring can be set for life." *Id.* at 71.

Claimant's employment with Interco and Senack was terminated on or about October 14, 1989. Mischel Affidavit at 3. On or about November 16, 1989, Claimant received correspondence from Interco "outlining the allegedly accrued retirement benefits and outlining the monthly vested retirement benefit that [he] would receive from Interco Incorporated." *Id.* In his affidavit, Claimant testified that the "outline of benefits did not accurately reflect the vested retirement benefits which were represented to [him] by Interco ..." *Id.*

In summary, Claimant asserts that the President and the Controller of Senack continually represented to him that he would

---

**2.** Bob Kemper was the assistant controller and Maurice Bowles was the controller at Senack.

become a member of the "Interco Executive Pension Plan." Claimant further asserts that between 1976 and 1981 he had discussions with three individuals at Senack who explained to him what benefits he would receive under the "Interco Executive Pension Plan."

### 2. Debtor's Assertions

Debtor asserts that "[i]n 1976, Claimant became a participant in the INTERCO INC. Divisions Retirement Plan (the "Plan"), which in June 1990 was merged into the INTERCO INCORPORATED Retirement Plan, a qualified pension plan maintained pursuant to [ERISA]." (the "Divisions Plan") Affidavit of Richard A. Lockard, p. 2, filed April 1, 1992. Debtor further asserts that "the pension plan in which Claimant is referred to in [the Spewak] letter is the same plan in which Claimant is now a participant." *Id.* at 4. According to Debtor, "[t]here was no other qualified plan in which Claimant *could* have been a participant. Unfortunately, the letter incorrectly states the name of the Plan." *Id.* (emphasis in original).

### B. *The Connecticut Litigation*

On February 6, 1990, Mr. Mischel instituted an action against Senack and Interco in the United States District Court for the District of Connecticut, in the form of a four-count complaint as follows: (1) alleging state common law claims for fraud; (2) alleging state common law claims for negligent misrepresentation; (3) alleging state common law claims for reckless misrepresentation; and (4) alleging a state law breach of contract claim. Mr. Mischel sought to recover damages under state law for alleged false representations by Senack and Interco concerning retirement benefits, severance pay, and vacation pay. Mr. Mischel's claim in this bankruptcy case is based on the Amended Complaint filed in the Connecticut litigation.

In the Connecticut litigation, Senack and Interco filed a motion to dismiss for failure to state a claim, asserting that Mr. Mischel's state common law claims are superseded by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1101 *et seq.* The District Court granted the Debtors' motion to dismiss for failure to state a claim as to the breach of contract claim, and denied the motion as to the tort claims. As part of that order, Mr. Mischel was given sixty days to amend his complaint. Mr. Mischel amended his complaint to change the fourth count from a common law breach of contract count to a claim against the Debtors under ERISA.

### III. Summary Judgment

Debtor's motion in connection with its objection to Mr. Mischel's claim has asserted three bases for summary judgment. First, "Claimant's state law causes of action sounding in contract and tort are preempted by ERISA." Memorandum in Support of Motion for Summary Judgment, p. 1, filed March 31, 1992. Second, Debtor contends that under the substantive law of ERISA, Mr. Mischel's Claim is without merit. Finally, Debtor argues that Mr. Mischel's claim is time barred.

Under Rule 56 of the Federal Rules of Civil Procedure as made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c).

### IV. ERISA Preemption

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983). "As part of this closely integrated regulatory system Congress included various safeguards to preclude abuse and 'to completely secure the rights and expectations brought into being by this landmark reform legislation.'" *Ingersoll–Rand Co. v. McClendon,* —— U.S. ——, 111 S.Ct. 478, 483, 112 L.Ed.2d 474 (1990) (quoting S.Rep. No. 93–127, p. 36 (1973)). The Supreme Court has recognized that ERISA's preemption clause is

"deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 46, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quoting *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)); *Ingersoll–Rand,* 111 S.Ct. at 482.[3] However, some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the state law relates to the plan. *Shaw,* 463 U.S. at 100, n. 21, 103 S.Ct. at 2901 n. 21.

The United States Supreme Court recently decided a question concerning ERISA preemption of a cause of action brought in a state court. In *Ingersoll–Rand v. McClendon,* a former employee sued the company in Texas state court, alleging that he was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA. 111 S.Ct. at 481. The Texas Supreme Court found that the employee's state law tort and contract claims were not preempted by ERISA because the employee was " '*not* seeking lost pension benefits but [was] instead seeking future lost wages, mental anguish and punitive damages as a result of the wrongful discharge.' " *Id.* (quoting *McClendon v. Ingersoll–Rand Co.,* 779 S.W.2d 69, 71 n. 3 (1989) (emphasis in original)).

The United States Supreme Court had "no difficulty in concluding the [state] cause of action ... 'relate[s] to' an ERISA-covered plan within the meaning of § 514(a), and is therefore preempted." *Id.* 111 S.Ct. at 483. This conclusion was based on the principle that the "Texas cause of action [made] specific reference to, and indeed [was] premised on, the existence of a pension plan." *Id.*

Claimant argues that *Ingersoll–Rand* is inapplicable here because, "[u]nlike in *In-*

*gersoll,* the existence of a pension plan under ERISA is not the critical factor in establishing liability under these common law theories." Claimant's Memorandum at 10. Claimant's argument is twofold: (1) he is not seeking recovery from the pension plan, but from the assets of Debtor's estate; and (2) the employee's cause of action in *Ingersoll* was premised upon the existence of a pension plan and Claimant's cause of action is premised on the nonexistence of the "Interco Executive Pension Plan."

First, this Court notes that in *Ingersoll–Rand* the Supreme Court found that ERISA preempted the state law cause of action even though the employee was not seeking lost pension benefits, but was seeking future lost wages, mental anguish and punitive damages. The Court focused on the fact that, although the employee was not seeking recovery from the pension plan, "the existence of a pension plan [was] a critical factor in establishing liability under the State's wrongful discharge law." *Ingersoll–Rand,* 111 S.Ct. at 483. Therefore, the fact that Claimant is not seeking recovery from the pension plan does not prevent this Court from finding that ERISA preempts his state law causes of action. Further, in this case Claimant's amended petition in the Connecticut litigation specifically requests "damages in the amount the defendants represented would be forthcoming in terms of retirement benefits, severance pay, and vacation pay ..." Amended Complaint, p. 12, attached as Exhibit A to Claimant Howard Mischel's Response to Objection of Senack Shoes, Inc., filed November 25, 1991. *See Smith v. Dunham–Bush,* 959 F.2d 6 (2d Cir.1992). ("Although [employee] attempts to fashion his complaint as one relating only to his pension benefits, and not to any plan, the existence of [employer's] pension plan

---

**3.** ERISA's broad preemption provision is found at Section 514(a) of ERISA, as set forth in 29 U.S.C. § 1144(a) as follows:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee bene-

fit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

Other preemption provisions include Section 510, 29 U.S.C. § 1140, which proscribes interference with rights protected by ERISA and Section 502(a), 29 U.S.C. § 1132(a), which provides for civil enforcement of ERISA.

would be a critical factor in establishing the extent of liability under state common law.")

Claimant alleges that Debtor's representatives told him he would be a member of the "Interco Executive Pension Plan." Debtor contends that no such plan exists. Therefore, Claimant argues that his state law causes of action for fraud and misrepresentation cannot "relate to" an ERISA employee benefit plan, because a claim cannot relate to a plan that does not exist.

This is not a situation in which the company has *no* employee benefit plan. *See, e.g., Scott v. Gulf Oil Corp.*, 754 F.2d 1499 (9th Cir.1985). Rather, this is a case in which Debtor contends that Claimant is a member of a certain pension plan and entitled to certain benefits while Claimant asserts that he is entitled to "damages in the amount [Debtor] represented would be forthcoming in terms of retirement benefits ..." Amended Complaint at 12. In other words, Mr. Mischel's claim is a claim " 'that he should be receiving a level of benefits which he is not.' " *Olson v. General Dynamics Corp.*, 951 F.2d 1123, 1125 (9th Cir.1991) (quoting the decision of United States District Court for the Southern District of California). Claimant's fraud and misrepresentation claims "relate to" an employee benefit plan, and are therefore preempted by ERISA. *See Id.* at 1128 (stating that an employee's state law fraud claims were preempted by ERISA). Mr. Mischel's claims for "compensation in the amount of the reasonable and just value of [Claimant's] reliance upon the [Debtor's] promises[,]" insofar as those claims are based on Mr. Mischel's state law tort claims, are also preempted by ERISA. Therefore, the Court finds and concludes that there is no genuine issue of material fact as to those state law claims and Debt-

or is entitled to summary judgment as a matter of law.[4]

### V. Substantive Claim Under ERISA

■ Claimant acknowledges that his state law breach of contract claims are preempted by ERISA. He therefore amended his complaint in the Connecticut litigation to allege a cause of action under ERISA for breach of contract. Count Four of the Amended Petition alleged a claim under 29 U.S.C. § 1132(a)(1)(B) which reads as follows:

A civil action may be brought—

(1) by a participant or beneficiary— ...

(B) to recover benefits due to him under terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan ...

Debtor asserts Claimant cannot prevail on this claim under the substantive law of ERISA.

■ "ERISA explicitly provides, in section 402(a), that all agreements relating to pension benefits must be in writing." *Smith v. Dunham–Bush*, 959 F.2d 6, 10 (citing 29 U.S.C. § 1102(a)(1)).[5] "The policy behind the 'written instrument' clause in ERISA is to prevent collusive or fraudulent side agreements between employers and employees." *Cefalu v. B.F. Goodrich Co.*, 871 F.2d 1290, 1296 (5th Cir.1989). "Furthermore, the writing requirement protects the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to such under the express terms of the plan." *Id.* "Modifications to ERISA benefit plans can only be accomplished by formal written amendments made in accordance with the provisions specified in the plan for amendment." *Singer v. Black & Decker Corp.*, 769 F.Supp. 911, 918 (D.Md.1991) (citing

---

**4.** The Honorable T. Emmet Clarie came to a different conclusion in the Connecticut litigation concerning ERISA preemption of these tort claims. *See Ruling on Defendants' Motions to Dismiss or for More Definite Statement*, Civil No. H 90–92 (TEC), June 5, 1990. However, in that opinion Judge Clarie found that "the question [had] not yet arisen in [the Second] Circuit" and other Circuits had reached the opposite conclusion. *Id.* at 11. Further, the United States Su-

preme Court had not yet ruled at the time of Judge Clarie's opinion, and the Supreme Court's decision in *Ingersoll–Rand* resolved that split among the Circuit Courts. 111 S.Ct. at 481, footnote.

**5.** "Every employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1).

*Nachwalter v. Christie,* 805 F.2d 956 (11th Cir.1986)).

Claimant asserts that the Divisions Plan benefits do not "accurately reflect the vested retirement benefits which were represented to [him] by Interco Incorporated and Senack Shoes, Inc. and which should be forthcoming from the Interco Executive Pension Plan." Mischel Affidavit at 4. Debtor agrees that the "terms of the Plan as set forth in the SPD (Summary Plan Description) clearly do not permit Claimant to receive the level of benefits to which he now claims he is entitled." Debtor's Memorandum at 12.

Mr. Mischel's claims for additional benefits are based on alleged oral representations and informal written representations such as the Spewak letter. These alleged modifications based on oral and informal written representations are unenforceable and cannot modify the Plan as a matter of law. *See Singer,* 769 F.Supp. at 918; *Warren v. Health and Welfare Fund of the Central States Southeast and Southwest Areas,* 752 F.Supp. 452, 455 (M.D.Ga.1990), *aff'd,* 946 F.2d 1547 (11th Cir.1991). Therefore, to the extent that Claimant asserts a claim under 29 U.S.C. § 1132(a)(1)(B), there is no genuine issue of material fact and Debtor is entitled to summary judgment as a matter of law.

### VI. Equitable Estoppel

■ Alternatively, Claimant contends that Debtor should be equitably estopped from denying him the level of benefits the Senack officials allegedly promised him.

Other courts have found that estoppel is applicable in ERISA actions. *See Black v. TIC Investment Corp.,* 900 F.2d 112, 114 (7th Cir.1990) (citing numerous other cases which have allowed the use of estoppel). However, "even among courts that recognize the availability of estoppel in ERISA cases, there is real resistance to the use of that doctrine." *Id.* at 115. The reason for this resistance is a "concern for the actuarial soundness of the ERISA plan." *Id.* At least one court has concluded that "[t]he validation and enforcement of oral agreement or modifications to pension plans through estoppel also conflicts with

§ 1102(a)(1)." *Cefalu v. B.F. Goodrich Co.,* 871 F.2d at 1297 n. 44.

Claimant asserts that Debtor should be estopped from denying him the benefits that were allegedly promised to him. However, allowing the use of estoppel in this case would result in allowing precisely what ERISA prohibits: modification of a pension plan through oral or informal written agreement. Therefore, this Court finds that Claimant cannot use estoppel principles to modify the benefits set out in the written pension plan.

This Court finds that Debtor is entitled to summary judgment in that Claimant's state law tort claims are preempted by ERISA and Claimant's remaining claim cannot be sustained under ERISA. Equitable estoppel is not applicable in this case. Therefore, it is not necessary to reach the issue of whether Claimant's cause of action is time barred.