964 F.2d 1449
 James J. SINGER; Richard Cawunder; Norma Wood; Ethel
Myers; Albert Cooper; Robert L. Bixler, Sr.;
Robert Hoffman, Plaintiffs-Appellants,
v.
The BLACK & DECKER CORPORATION; Black & Decker (U.S.)
Incorporated; Black & Decker, Incorporated; Stephanie F.
Page; M. Clayton Roop; James C. Davis; Sean C. James;
Francis J. Rosenthal; Leonard A. Strom, Defendants-Appellees.
 No. 91-1669.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1992.
Decided May 27, 1992.
 
 W. Michael Pierson, Pierson, Pierson & Nolan, Baltimore, Md., argued (Robert L. Pierson, Baltimore, Md., Frederick H. Stalfort, Hampstead, Md., Lawrence A. Melfa, Towson, Md., Charles Lee Nutt, Baltimore, Md., on brief), for plaintiffs-appellants.
 Virginia Wood Barnhart, Miles & Stockbridge, Towson, Md., argued (K. Donald Proctor, on brief), for defendants-appellees.
 Before SPROUSE, WILKINSON, and WILKINS, Circuit Judges.
 OPINION
 WILKINS, Circuit Judge:
 
 
 1
 Appellants sued their former employer, Black & Decker,[1] seeking a declaration that they were entitled to enhanced early retirement benefits. The district court granted summary judgment in favor of Black & Decker. It rejected the employees' claims alleging violations of federal common law under the Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C.A. §§ 1001 et seq. (West 1985 & Supp.1992). In doing so, it repudiated the use of preempted state common-law causes of action in fashioning federal common law. It also found that even if the use of federal common law were appropriate, the evidence viewed in the light most favorable to the employees demonstrated that Black & Decker was entitled to judgment as a matter of law. Singer v. Black & Decker Corp., 769 F.Supp. 911, 916-18 & n. 8 (D.Md.1991). Agreeing with this latter reasoning, we affirm.
 
 I.
 
 2
 In 1981 Black & Decker sought to reduce the work force at its Hampstead, Maryland facility. In order to ease the burden the cutback would have on long-time employees, it offered an optional early retirement program for qualified employees. Black & Decker amended its retirement plan, which provided for regular retirement at age 62, to offer a limited program known as the 1981 Special Retirement Program, extending early retirement to qualified employees who were then 58 years of age with at least five years of service and offering a cash payment to those employees who were already over age 62. This notice informing employees of this proposal stated that in order to qualify the employee must retire between specified dates in 1981. It also stated that "after July 1, 1981, this special retirement program will no longer be offered." In 1983, when additional reductions in the work force at the Hampstead facility became necessary, a similar early retirement program was offered. Again, Black & Decker amended its retirement plan and notified employees that the benefits were offered pursuant to a special program and that after a specified date the offer would no longer be available.
 
 
 3
 In 1985 Black & Decker decided to close the Hampstead facility. Terminated employees received one week of severance pay for each year of service with the company, but Black & Decker did not offer an optional early retirement program.[2] A group of employees at the Hampstead facility brought this action in Maryland state court, arguing that they were entitled to enhanced early retirement benefits. In causes of action based on state law, they claimed that the offers in 1981 and 1983 of enhanced early retirement benefits constituted an implied representation that similar benefits would be offered in the future and that the previous offers, combined with the modernization of the Hampstead facility in 1983, induced employees, who were not retiring, to remain with the company rather than seek employment elsewhere when reductions in the work force began.
 
 
 4
 Black & Decker removed the action to the United States District Court for the District of Maryland, contending that these claims were preempted by ERISA. The district court agreed and instructed the employees to replead. The resulting complaint alleged five causes of action. Three counts alleged claims under federal common law-breach of contract, promissory estoppel, and equitable estoppel--while the remaining two counts alleged, respectively, that the ERISA plan was impliedly amended by the 1985 notice and that the plan administrators breached their fiduciary duty under ERISA by failing to offer enhanced early retirement benefits to the employees affected by the closing of the Hampstead facility.
 
 
 5
 Both parties then moved for summary judgment. The district court ruled that there were no genuine issues of material fact and that Black & Decker was entitled to judgment as a matter of law. See Singer, 769 F.Supp. at 915-19. With respect to the first three counts, the court reasoned that it was inappropriate to employ federal common law to provide a remedy for a wrong that was cognizable under a preempted, state common-law cause of action and that even if the federal commonlaw theories were accepted by the court, the employees' claims would not give rise to liability. See id. at 916-18 & n. 8. The district court also found that there were no disputed issues of material fact and that Black & Decker was entitled to judgment as a matter of law in the two remaining counts based on alleged ERISA violations. Id. at 918-19. The employees appeal.
 
 II.
 
 6
 In enacting ERISA, Congress established a comprehensive statutory scheme to govern employee benefit plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987). Congress, however, intended that the courts would "develop a 'federal common law of rights and obligations under ERISA-regulated plans.' " Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989) (quoting Pilot Life Ins. Co., 481 U.S. at 56, 107 S.Ct. at 1557); see Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 156-57, 105 S.Ct. 3085, 3097-98, 87 L.Ed.2d 96 (1985) (Brennan, J., concurring) (discussing legislative history demonstrating congressional intent that courts develop federal common law). It has proved a difficult task delineating those situations in which federal common law is a desirable companion to ERISA from those in which federal common law imposes an unwarranted and unacceptable expansion of those rights and remedies established by ERISA.
 
 
 7
 Several principles have emerged as guides for the courts in demarking those situations in which the development of federal common law is inappropriate. Importantly, courts must be conscientious to fashion federal common law only when it is " 'necessary to effectuate the purposes of ERISA.' " Provident Life & Accident Ins. Co. v. Waller, 906 F.2d 985, 992 (4th Cir.) (quoting U.S. Steel Mining Co. v. District 17, United Mine Workers, 897 F.2d 149, 153 (4th Cir.1990)), cert. denied, --- U.S. ----, 111 S.Ct. 512, 112 L.Ed.2d 524 (1990). Thus, resort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA, discourage employers from implementing plans governed by ERISA, or threaten to override the explicit terms of an established ERISA benefit plan. See id. at 992-93. And, courts should remain circumspect to utilize federal common law to address issues that bear at most a tangential relationship to the purposes of ERISA. Id. at 992.
 
 
 8
 With these principles in mind, we conclude that the district court painted with too broad a brush in stating categorically that courts should not look to state common-law causes of action that have been preempted by ERISA in fashioning federal common law. While it is inappropriate to " 'use state common law to re-write' " ERISA, id. (quoting Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir.1986)), it is also inappropriate to hold that state common-law causes of action that have been preempted by ERISA may not be used to assist in shaping a body of federal common law. See Holland v. Burlington Indus., Inc., 772 F.2d 1140, 1147 n. 5 (4th Cir.1985) (noting that Congress intended for the courts to borrow from state law when appropriate in fashioning federal common law to govern ERISA), aff'd sub nom. Brooks v. Burlington Indus., Inc., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559, and cert. denied sub nom. Slack v. Burlington Indus., Inc., 477 U.S. 903, 106 S.Ct. 3271, 91 L.Ed.2d 562 (1986). In fact, the district court opinion conflicts in this respect with our opinion in Provident Life, in which we recognized a remedy under the federal common law of ERISA by drawing on the preempted, state common-law doctrine of unjust enrichment. See Provident Life & Accident Ins. Co., 906 F.2d at 992-94.
 
 
 9
 In enacting the preemption provisions of ERISA, Congress sought "to ensure that plans and plan sponsors would be subject to a uniform body of benefit law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government." IngersollRand Co. v. McClendon, --- U.S. ----, 111 S.Ct. 478, 484, 112 L.Ed.2d 474 (1990). The preemption of state laws relating to employee benefits guarantees that plans and plan sponsors are subject to only a single, federal set of requirements. The potential for plans and plan sponsors to be subject to irreconcilable conflicting requirements is not presented by courts employing recognized state common-law doctrines to assist in shaping the federal common law of ERISA. In fashioning federal common law, courts do not look to the law of a particular state, but rather should apply common-law doctrines best suited to furthering the goals of ERISA. Consequently, federal common law should be consistent across the circuits. To the extent that inconsistencies arise, Congress and the Supreme Court are capable of harmonizing them. Thus, the prediction of the district court that use of preempted state commonlaw doctrines to shape a federal common law of ERISA would frustrate Congress's goal of uniformity is unfounded. See Singer, 769 F.Supp. at 916-17.
 
 III.
 
 10
 We need not decide whether adoption of the federal common law causes of action urged by the employees would be appropriate because, despite our concern regarding the breadth of the opinion of the district court, we conclude that the lower court properly granted summary judgment for Black & Decker based on its conclusion that the employees failed to present evidence sufficient to raise a genuine issue of fact for trial on any of their claims and Black & Decker is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We, therefore, affirm on this reasoning of the district court. See Singer, 769 F.Supp. at 918-19 & n. 8.
 
 
 11
 AFFIRMED.
 
 WILKINSON, Circuit Judge, concurring:
 
 12
 I am in agreement with the panel that the district court's entry of summary judgment for defendants should be affirmed. I write here to emphasize my view that federal courts should be quite cautious in fashioning federal common law to govern actions brought under ERISA.
 
 
 13
 I fear it will be all too tempting for federal courts, in the cloak of federal common law, to effectively rewrite portions of this federal statute. See Provident Life & Accident Ins. Co. v. Waller, 906 F.2d 985, 992 (4th Cir.1990). The device of federal common law does not authorize federal courts to smuggle state common law principles into ERISA without regard for the statutory text. See, e.g., id. at 992; Nachwalter v. Christie, 805 F.2d 956, 959-60 (11th Cir.1986). State rights and remedies that are expressly preempted under ERISA by 29 U.S.C. § 1144 may not be resuscitated as federal common law claims without an exacting examination of whether ERISA permits such a result. ERISA's preemption provision was designed to avoid "conflicting employer obligations and variable standards of recovery" under various states' laws. Holland v. Burlington Indus., Inc., 772 F.2d 1140, 1147 (4th Cir.1985), aff'd mem., 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986). While federal law is more of a single corpus than state law, these practical concerns do not magically disappear in the case of federal common law. The prospect of disuniformity remains especially disquieting for businesses with national plans and multi-state operations that can expect to be sued in many different federal forums. The mere re-labelling of preempted state claims as federal common law principles would in my judgment effectively nullify 29 U.S.C. § 1144.
 
 
 14
 ERISA demands adherence to the written terms of an employee benefit plan. The statute requires that all ERISA plans be "established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), and that the written instrument describe the formal procedures by which the plan can be amended, id. § 1102(b)(3). These two provisions are designed to give both the "plan's participants and administrators a clear understanding of their rights and obligations," Cefalu v. B.F. Goodrich Co., 871 F.2d 1290, 1296 (5th Cir.1989), and they do not authorize oral or implied modifications to a written plan. Indeed, even a written modification must be adopted in conformity with the amendment procedures set out in the plan in order to have effect. Federal common law does not provide a backdoor through which these statutory requirements may be evaded, and attempts to import state common law principles such as equitable or promissory estoppel to alter and undermine written obligations have been consistently rebuffed by the courts. See, e.g., Hozier v. Midwest Fasteners, Inc., 908 F.2d 1155, 1165 n. 10 (3d Cir.1990); Cefalu, 871 F.2d at 1296-97; Musto v. American Gen. Corp., 861 F.2d 897, 910 (6th Cir.1988); Straub v. Western Union Tel. Co., 851 F.2d 1262, 1265-66 (10th Cir.1988); Nachwalter, 805 F.2d at 959-61; see also Pizlo v. Bethlehem Steel Corp., 884 F.2d 116, 120 (4th Cir.1989) (rejecting claims because "they rest on an allegation that the pension plan was modified by informal and unauthorized amendment which, as a matter of law, is impermissible").
 
 
 15
 Importation of state common law principles to alter written obligations would not only conflict with the text of the statute, it would also undermine the purposes of ERISA. ERISA is designed" to promote the interests of employees and their beneficiaries in employee benefit plans," Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983), as well as "to protect contractually defined benefits," Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148, 105 S.Ct. 3085, 3093, 87 L.Ed.2d 96 (1985). These interests are hardly promoted if deviations from the written plan are freely allowed. Modifications to a written plan that do not conform to the formal amendment procedures threaten the actuarial soundness of the plan and thereby undercut the ability of plan participants to rely on their expected stream of benefits. See, e.g., National Cos. Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, Inc., 929 F.2d 1558, 1571 (11th Cir.1991); Cefalu, 871 F.2d at 1296. Strict adherence to a written plan also prevents a collusive agreement between an employer and a favored employee that could operate to the detriment of all other plan participants' rights. See id. In addition, if employer obligations could be casually created outside the written plan, a substantial disincentive to offering such plans would arise since employers would be potentially exposed to massive future liabilities for which they could not confidently plan. See Moore v. Metropolitan Life Ins. Co., 856 F.2d 488, 492 (2d Cir.1988). This would undercut the public interest in encouraging employers to offer these plans. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 54, 107 S.Ct. 1549, 1556, 95 L.Ed.2d 39 (1987). Finally, allowing informal modifications would invite costly, litigious evidentiary disputes over what "promises" or "representations" were or were not made. While this list is by no means complete, it offers a glimpse into how use of federal common law to undermine a written plan would do serious harm to the aims of the statute.
 
 
 16
 Here the district court properly refused to use federal common law to fashion a basis for plaintiffs to recover. Black and Decker expressly stated that its previous early retirement offers were available only to a limited group of eligible employees for a limited period of time. Plaintiffs seek to find implied representations stemming from these earlier offers, as well as from an earlier plant modernization, that these benefits would be offered to them in the event of a work force reduction. However, they can point to no formal written amendment to the plan that created any such entitlement to benefits.
 
 
 17
 In a given instance, it may seem unfair to deny an employee benefits of which he or she seems deserving. We accommodate this sense of fairness by interpreting truly ambiguous plan provisions in the interests of those beneficiaries both the statute and the plan were intended to serve. It serves no interest, however, other than that of actuarial chaos, to have the courts overturning carefully crafted plan provisions in the name of federal common law. Because I believe the panel's decision is consistent with this view, I concur in it.
 
 
 
 [1]
 The employees sued The Black & Decker Corporation, Black & Decker (U.S.) Incorporated, Black & Decker, Incorporated, and individual members of the Pension Committee that administers the Black & Decker Retirement Plan. For ease of reference we refer to these appellees collectively as "Black & Decker."
 
 
 [2]
 The employees maintain that a notice offering early retirement benefits was posted briefly in 1985. Although the evidence presented on this issue was conflicting, for purposes of summary judgment, we assume this notice was posted. Because it is undisputed that none of the employees sought to take advantage of the early retirement benefits prior to withdrawal of the notice, because the employees have failed to show that any formal amendment of the plan was undertaken, and because none of the employees have shown that they relied to their detriment on the alleged posting of the notice, it has no bearing on the issues before us