**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In the Matter of: SHAWN R. PARIS

ROBERT B. PARIS, natural father of
Shawn R. Paris; WANDA C. PARIS,
Guardian of Shawn R. Paris and
natural mother of Shawn R. Paris,                    No. 99-1558
Petitioners-Appellants,

v.

IRON WORKERS TRUST FUND, Local
No. 5, Washington, D.C.,
Respondent-Appellee.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, District Judge.
(CA-99-613-S)

Argued: March 1, 2000

Decided: April 17, 2000

Before MICHAEL, Circuit Judge,
G. Ross ANDERSON, Jr., United States District Judge
for the District of South Carolina, sitting by designation,
and James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Nathaniel Crow Fick, Jr., FICK & PETTY, Towson, Maryland; C. William Michaels, Baltimore, Maryland, for Appellants. Francis Jude Martorana, O'DONOGHUE & O'DONOGHUE, Washington, D.C., for Appellee. **ON BRIEF:** Daniel J. McNeil, O'DONOGHUE & O'DONOGHUE, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants appeal the district court's order granting summary judgment. The district court granted summary judgment on the basis that the make-whole doctrine* did not apply to the subrogation provision in the ERISA plan in question, thereby allowing subrogation of Appellants' recovery against a third party in favor of Appellee. Essentially, Appellants ask us either to adopt the make-whole doctrine as a matter of federal common law under ERISA or to find that state law governs the question of whether the make-whole doctrine applies and certify the question to the Maryland Court of Appeals. For the reasons stated below, we decline Appellants' request and affirm the district court.

_____

*The make-whole doctrine, when applicable, limits an insurer's right to subrogation of an insured's recovery against a third party. Generally, under the doctrine, an insurer is entitled to subrogation of an insured's recovery against a third party only to the extent that the combination of the proceeds the insurer has already paid to the insured and the insured's recovery from the third party exceed the insured's actual damages. In other words, the insured must be made whole before the insurer can exercise his right of subrogation. See Harris v. Harvard Pilgrim Health Care, Inc., 20 F. Supp. 2d 143, 150 (D. Mass. 1998).

2

I.

Shawn R. Paris is a participant in the Iron Workers Fund (Fund). He sustained serious injuries in a motorcycle accident and submitted a claim for medical benefits under the Fund's ERISA-qualified Plan of Benefits (Plan). The Fund does not provide benefits to the extent of any recovery from a third party but will advance benefits prior to any such recovery subject to the following subrogation provision in the Plan:

> Once the Third Party's liability is resolved, you will be required to reimburse the Fund up to the full amount of the recovery for the full amount of loss of . . . benefits received. In such cases, the acceptance of benefits . . . constitutes an agreement . . . to reimburse the Fund for benefits paid up to the full amount of the recovery. . . . By accepting benefits from the Fund, the injured person agrees that any amounts recovered by the injured person by judgment, settlement or otherwise will be applied first to reimburse the Fund.

The Fund advanced over $200,000 in benefits and entered a subrogation agreement with Wanda C. Paris as guardian for Shawn. The subrogation agreement provides: "The Fund shall not be responsible for any of the Claimant's attorney's fees or the costs of Claimant's litigation."

Shawn's parents sued the driver of the other vehicle involved in the accident and settled that suit for $100,000. Although Shawn's damages clearly exceeded that amount, $100,000 was the limit of existing insurance coverage. The Parises filed a petition in Maryland state court seeking an apportionment of the settlement proceeds, asserting that the make-whole doctrine prevented subrogation by the Fund. The Fund sought the entire sum as partial reimbursement for the benefits it advanced. Neither party disputed that the Plan was subject to ERISA.

After removal from state court, the United States District Court for the District of Maryland granted the Fund's motion for summary judgment based on the clear and unequivocal language of the Plan. The district court had informed the parties' attorneys that Maryland

3

law was inapplicable and, in its order, refused to apply the make-whole doctrine as a matter of federal common law. The court also refused to permit a pro rata deduction of attorney's fees because of the subrogation agreement. After a de novo review of the relevant documents and the applicable law, we must affirm the district court.

II.

ERISA establishes a comprehensive regulatory scheme for self-funded employee benefit plans that preempts state law. The Supreme Court has noted that ERISA's preemption clause is conspicuously broad. See FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990). "It establishes as an area of exclusive federal concern the subject of every state law that `relate[s] to' an employee benefit plan governed by ERISA." Id. (alteration in original). Nonetheless, ERISA's regulatory scheme, though comprehensive, is not exhaustive, and in United McGill Corp. v. Stinnett, 154 F.3d 168 (4th Cir. 1998), we noted: "In enacting ERISA, Congress intended for the judiciary to develop a body of federal common law to supplement the statute's express provisions." 154 F.3d at 171. However, we also stated that "[c]ourts should only fashion federal common law when `necessary to effectuate the purposes of ERISA'" and that "`[r]esort to federal common law generally is inappropriate when its application would . . . threaten to override the explicit terms of an established ERISA benefit plan.'" Id. (quoting Singer v. Black & Decker Corp. , 964 F.2d 1449, 1452 (4th Cir. 1992)). "Rather, one of the primary functions of ERISA is to ensure the integrity of written, bargained-for benefit plans." Id. at 172. Therefore, "the plain language of an ERISA plan must be enforced in accordance with `its literal and natural meaning.'" Id. (quoting Health Cost Controls v. Isbell, 139 F.3d 1070, 1072 (6th Cir. 1997)).

III.

As an initial matter, Maryland law cannot govern the question of whether the make-whole doctrine applies in this case, for even if Maryland law spoke to the issue, ERISA preempts state law regarding subrogation rights. See FMC Corp., 498 U.S. at 58, 65; Hampton Indus., Inc. v. Sparrow, 981 F.2d 726, 728-30 (4th Cir. 1992) (preemption of state statute limiting subrogation); Harris v. Harvard Pil-

4

grim Health Care, Inc., 20 F. Supp. 2d 143, 148-149 (D. Mass. 1998) (preemption of subrogation statute). The district court was therefore correct in notifying counsel that Maryland law was inapplicable and in treating the issue as a matter of federal law. Consequently, no basis exists for certifying a question to the Maryland Court of Appeals.

As a federal matter, our decision in United McGill, supra, prevents us from resorting to federal common law in this case, let alone adopting the make-whole doctrine as a new federal common-law principle for ERISA cases. As Appellants conceded at oral argument, the subrogation provision in the Fund's Plan is plain and clear. It entitles the Fund to reimbursement of the full amount of Appellants' recovery. We must enforce this unambiguous provision in accordance with its plain language and literal meaning, and it would therefore be inappropriate for us to override the provision by grafting onto it the make-whole doctrine.

In reviewing the Plan, we have kept in mind that contracts subject to the provisions of ERISA are very different from ordinary insurance contracts and are not subject to the same rules of construction. ERISA requires that drafters of plans use clear, ordinary language that is readily understandable by laypersons, whereas ordinary insurance contracts contain more particular and precise language, as well as confusing legalese and boilerplate. Applying the same doctrines and rules of construction to ERISA contracts that generally apply to insurance contracts, such as the make-whole doctrine or the rule requiring courts to construe insurance contracts strictly against their drafters, would frustrate the purposes of ERISA. As the Fifth Circuit stated in Sunbeam-Oster Co. v. Whitehurst, 102 F.3d 1368 (5th Cir. 1996): "[W]e should not (and will not) penalize[ERISA plans] for lack of technical precision or verbosity by labeling the Plan `silent' or `ambiguous' when it uses the kind of direct, jargon-free language that is mandated by ERISA for all summary plan descriptions . . . ." 102 F.3d at 1375. As to the plan in question, we find it equally as clear as the plan in Sunbeam-Oster, and we reach the same conclusion the Fifth Circuit reached there.

> When [the Plan's] language is read in context and viewed in light of all the circumstances, it can only mean that the Plan is entitled to be paid back by the beneficiary all

5

amounts that the Plan has paid to the beneficiary, or on his behalf, to the full extent . . . that the beneficiary recovers from another source . . . .

Id. at 1375-76.

We note also that self-funded ERISA plans generally have very limited resources that they must use for the benefit of all their participants. Subrogation is an extremely important tool for maintaining the financial viability of such plans.

Our decision not to adopt the make-whole doctrine as a matter of federal common law in ERISA cases comports with the weight of authority addressing the issue. See, e.g., Waller v. Hormel Foods Corp., 120 F.3d 138 (8th Cir. 1997); Sunbeam-Oster, supra; Cutting v. Jerome Foods, Inc., 993 F.2d 1293 (7th Cir. 1993); Great-West Life & Annuity Ins. Co. v. Barnhart, 19 F. Supp. 2d 584 (N.D. W. Va. 1998). In addition, this case is distinguishable from Barnes v. Independent Automobile Dealers Ass'n of California Health & Welfare Benefit Plan, 64 F.3d 1389 (9th Cir. 1995), wherein the Ninth Circuit adopted, as a matter of federal common law, a rule that "in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation." 64 F.3d at 1395. As the plan in this case contains a clear provision contrary to the make-whole doctrine, we need not consider adopting a rule similar to the Ninth Circuit's at this time. Furthermore, we reject Appellants' suggestion to follow Eleventh Circuit precedent holding that the make-whole doctrine is a default rule in ERISA cases limiting a plan's subrogation rights absent explicit preclusion of the doctrine by the plan. See Cagle v. Bruner, 112 F.3d 1510, 1521 (11th Cir. 1997). Such a rule would frustrate the purposes of ERISA by requiring plan drafters to inject legalese into plans rather than use clear, ordinary language explaining the plan's provisions. Laypersons generally would not understand a reference to the make-whole doctrine.

As a final matter, although it is questionable whether Appellants have properly appealed the district court's ruling as to attorney's fees, we note that the district court correctly decided that Appellants were not entitled to a pro rata deduction of attorney's fees. The subrogation

6

agreement in this case clearly addressed the issue of attorney's fees and was not inconsistent with any language in the Plan.

IV.

At oral argument, Appellants contended that ERISA unfairly grants drafters of plans broad power to override equitable doctrines such as the make-whole doctrine. Appellants urged us to restrict that power. However, while Congress has granted courts some authority under ERISA, that authority is limited. We must enforce the plain language of an ERISA plan that does not conflict with any of ERISA's provisions. Therefore, while we are aware of the possible hardships when an accident victim must reimburse a plan even when not made whole, Appellants' proper recourse is to Congress, not the courts.

For the reasons stated above, we affirm the district court.

AFFIRMED

7