Agnes, A.J.
The plaintiff is a coach of a girls’ softball team which plays in a league organized and administered by the defendant Youth Sports Association Purchasing Group (hereafter, “Association”). The plaintiff alleges that he was injured as a result of the Association’s negligence during a softball game in which the coaches participated as players. The Association has filed a motion for summary judgment in which it maintains that it did not breach a duty of care owed to the plaintiff, and, in any case, it is immune from liability for negligence claims under G.L.c. 231, §85V.
BACKGROUND
The essential facts are not in dispute. The Association is described as a non-profit organization that conducts a girls softball program in Beverly, Massachusetts for children ages 9-11. The officers, directors and coaches involved in the program are volunteers. In 1998 and 1999, the plaintiff served as an Assistant Coach to a team on which his nine-year-old daughter played. Each year the Association holds a coaches game in which coaches from the various teams play a game against each other. On June 4, 1999, the plaintiff, who was 37 years old at the time, participated in such a coaches game. It was not a regular league game. None of the girls who play in the league sponsored by the defendant Association played or participated in the coaches game. Among the other men who participated in the game was a 38-year-old person and a 40-year-old person.
The game was played on a field that is owned and maintained by the City of Beverly and the Beverly School Department. The game was played using the same equipment, including the same bases, used during regular Association games. Prior to the game, the plaintiff did not observe any defects in the field, and made no complaints to anyone about the conditions of the field. Also, prior to the game, the Association’s president, Mark Casey, inspected the field to ensure that there were no safety hazards.
The plaintiff was injured while playing in the coaches game on June 14, 1999. According to the plaintiffs account, which the court accepts as true for purposes of this motion, he came up to bat during the first inning. He hit the ball and ran from home plate to first base. He planted his foot squarely on the bag which gave way under his feet. He tumbled head over heels landing hard on his wrist. The plaintiff later learned that he shattered his navicular bone and tore ligaments in his wrist. The plaintiff did not leave the game after this injury. He remained in the game and batted at least one more time.
The first base bag that was used in the game of June 14, 1999, was made of plastic and was not attached *656 to the field. The plaintiff maintains that while these bags may have been suitable for children in the range of 60 pounds, they were of an inferior quality and not appropriate for adults in the range of 200 to 250 pounds.
DISCUSSION
1. Standards applicable to a motion for summary judgment. “Summary judgment is a ‘device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts or if only a question of law is involved.’ ” Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983) (citations omitted). The function of a motion under Mass.R.Civ.P. 56, is to “pierce the boilerplate of the pleadings and assay the parties’ proof in an effort to determine whether trial is actually required." Harris v. Harvard Pilgrim Health Care, Inc., 20 F.Supp.2d 143, 146-47 (D.Mass. 1998), citing McIntosh v. Antonino, 71 F.3d 29, 33 (1st Cir. 1995). Thus, summary judgment should be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). Also, summary judgment may be granted against the moving party, and may be granted as to certain issues but not others. See Community Bank v. Dawes, 369 Mass. 550, 553 (1976).
The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once this is satisfied, the burden shifts to the party opposing summary judgment to allege specific facts establishing the existence of a genuine issue or issues of material fact. Id. In assessing whether each party has met its burden, the court is not permitted to weigh the evidence, to determine the credibility of any witnesses or make any findings of fact. Kelly v. Rossi, 395 Mass. 659, 663 (1985). Moreover, “[t]he evidence is ‘considered with an indulgence in the [opposing party’s] favor.’ ” Anthony’s Pier Four v. Crandall Dry Dock Engineering, Inc., 396 Mass. 818, 822 (1986), quoting National Ass’n of Gov’t Employees v. Central Broadcasting Corp., 379 Mass. 220, 231 (1979), cert. denied, 446 U.S. 935 (1980). However, “[a] complete failure of proof concerning an essential element of the non-moving party’s case renders all other facts immaterial.” Kourouvacilis, supra at 711, citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).
In determining whether there are genuine issues of material fact, the court may consider the pleadings, depositions, answers to interrogatories, admissions on file and affidavits. Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The party opposing summary judgment cannot defeat the motion simply by resting on the pleadings and mere assertions that there are disputed facts. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). If the moving party does not bear the burden of proof at trial, it may demonstrate the absence of a genuine issue of material fact by submitting evidence that negates an essential element of the other party’s claim, or by showing that the other party has no reasonable expectation of proving an essential element of its case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
“Summary judgment is seldom sought or granted in negligence actions.” Manning v. Nobile, 411 Mass. 382, 388 (1991), quoting Inferrera v. Sudbury, 31 Mass.App.Ct. 96, 103 (1991). This is because negligence claims so often involve disputed questions of fact. Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994), citing Mullins v. Pine Manor College, 389 Mass. 47, 65 (1983); Solimene v. B. Gravel & Co., KG, 399 Mass. 790, 794 (1987). However, even in negligence actions, summary judgment is appropriate “if no rational view of the evidence permits a finding of negligence.” Roderick, supra at 949.
2. The Defendant Association is not immune from liability. The defendant Association maintains that it is entitled to summary judgment because the plaintiffs claim for negligence is barred by G.L.c. 231, §85V. This statute, which is entitled “Sports program volunteers’ liability; definitions,” provides, in part, as follows:
As used in this section, unless the context requires otherwise, the following words shall have the following meanings:
Compensation," shall not include reimbursement for reasonable expenses actually incurred or to be incurred or, in the case of umpires or referees, a modest honorarium.
“Nonprofit association,” an entity which is organized as a nonprofit corporation or nonprofit unincorporated association under the laws of the commonwealth or the United States or any entity which is authorized to do business in the commonwealth as a nonprofit corporation or unincorporated association under the laws of the commonwealth.
“Sports program,” baseball, softball, football, basketball, soccer and any other competitive sport formally recognized as a sport by the United States Olympic Committee as specified by and under the jurisdiction of the Amateur Sports Act of 1978 Public Law 95-606, 36 U.S.C. §371 et seq., the Amateur Athletic Union or the National Collegiate Athletic Association. It shall be limited to a program or that portion of a program that is organized for recreational purposes and whose activities are substantially for such purposes and which is primarily for participants who are eighteen years of age or younger whose nineteenth birthday occurs during the year of participation or the competitive season, *657 whichever is longer; provided, however, that there shall be no age limitation for programs operated for the physically handicapped or mentally retarded.
Except as otherwise provided, in this section, no person who without compensation and as a volunteer, renders services as a manager, coach, umpire or referee or as an assistant to a manager or coach in a sports program of a nonprofit association or who renders services to a sailing program of a nonprofit association, no nonprofit association conducting a sports or a sailing program, and no officer, director, trustee, or member thereof serving without compensation shall be liable to any person for any action in tort as a result of any acts or failures to act in rendering such services or in conducting such sports program. The immunity conferred by this section shall not apply to any acts or failures to act intentionally designed to harm, or to any grossly negligent acts or failures to act which result in harm to the person. Nothing in this section shall be construed to affect or modify any existing legal basis for determining the liability, or any defense thereto, of any person not covered by the immunity conferred by this section.
The defendant Association maintains that the language of the statute (“no nonprofit association conducting a sports . . . program . . . shall be liable to any person for any action in tort as a result of any acts or failures to act in rendering such services or in conducting such sports program”) renders it immune from liability in tort for negligence actions like the one pressed by the plaintiff in this case. The defendant relies on a recent trial court decision in Crocker v. Wakefield Little League Association, Inc., 1999 WL 1318990 (Mass. Super. 1999) (Spurlock, J.) [10 Mass. L. Rptr. 63). In Crocker, the Superior Court held that the statutory grant of immunity set forth in G.L.c. 231, §85V was found applicable to a negligence action by a young boy who accompanied his mother to his brother’s Little League baseball game, and who was injured while he was walking under the bleachers when another spectator jumped off the bleachers and landed on him. In Crocker, the court relied on decisional law construing the scope of charitable immunity under G.L.c. 231, §85K, in reasoning that the legislature intended to go even further by adopting G.L.c. 231, §85V. Thus, the court concluded that §85V should be read “broadly enough to encompass all activities integral to a sports program.” In Croker, the court held that the operation of a Little League program encompassed not only practicing and playing baseball games, but the opportunity for spectators such as members of the players’ families to watch the games. It therefore reasoned that if the Little League acted negligently in erecting bleachers or failing to properly supervise spectators, it did so under the protection of G.L.c. 231, §85V, and was immune from liability.
It is unnecessary in this case to determine the contours of the immunity conferred on nonprofit softball or baseball associations in connection with injuries that may be suffered by players or spectators during regular games involving the youth members.[1] The injury in the present case did not occur during such a game or practice. Under the statute, a “Sports program” is defined more narrowly than simply the activities of a nonprofit association that sponsors youth softball games. Rather, immunity from liability under the statute is conferred only on a sports program “whose activities are substantially for such purposes [recreation] and which is primarily for participants who are eighteen years of age or younger whose nineteenth birthday occurs during the year of participation or the competitive season, whichever is longer; provided, however, that there shall be no age limitation for programs operated for the physically handicapped or mentally retarded.”
The defendant’s position is because the Association’s activities were primarily for the benefit of a young female population of softball players that it enjoys immunity from liability in negligence for any activities that are related to that. This interpretation, however, conflicts with the express exclusions from the scope of immunity that are set forth in the statute. The statute contains the following exclusion:
Nothing in this section shall be construed to affect or modify the liability of a person or nonprofit association for any of the following:
(i) acts or failures to act which are committed in the course of activities primarily commercial in nature even though carried on to obtain revenue for maintaining the sports program or revenue used for other charitable purposes.
(ii) any acts or failures to act relating to the transportation of participants in a sports program or others to or from a game, event or practice.
(iii) acts or failures to act relating to the care and maintenance of real estate which such persons or nonprofit associations own, possess or control and which is used in connection with a sports program and or any other nonprofit association activity.
G.L.c. 231, §85V. This exclusionary language reflects a clear legislative intention that not all activities undertaken to further the recreational purposes of a nonprofit sports’ organization serving the needs of children will render the organization immune from liability for negligence. Thus, if a youth sports organization is not immune in a negligence action that arises out of the activity of a parent or child participating in a commercial activity such as a car wash or a bake sale, there is no reason to suppose that it enjoys immunity from liability for injuries that result due to its negligence during a coaches game in which the children do not participate.
*658 3. The defendant Association did not owe the plaintiff a duty of care. The duty of care that one person owes to another that when breached constitutes negligence, and thus may give rise to liability in tort, stems from a recognition by the courts that a special relationship exists between the parties, see Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624 (1989),[2] or a judgment by the legislature that the needs of society require that the law impose such a duty on a party. This is not a case in which the legislature has established that an organization, such as the defendant Association, owes a legal duty to the adults who choose to participate in a coaches softball game. Contrast, e.g., G.L.c. 90, §14 (establishing a duty on the part of motorists to take precautions when approaching or passing by animals, pedestrians, railway cars, street and school buses, and bicyclists); LaClair v. Silberline, 379 Mass. 21, 29 (1979) (statutory duty of corporation to provide employee with Workers’ Compensation coverage). Nor is it a case in which the relationship between the plaintiff and the defendant involve any of the characteristics that have led courts to recognize the existence of a legal duty of care.
The Supreme Judicial Court has considered the relationship that exists between participants in sports competitions in terms of the duty of care one owes to another. In Gauvin v. Clark, 404 Mass. 450 (1989), the court held that participants in sporting competitions would not be liable to one and another for negligence. The court observed that “(p)layers, when they engage in sport, agree to undergo some physical contacts which could amount to assault and battery absent the players’ consent. The courts are wary of imposing wide tort liability on sports participants, lest the law chill the vigor of athletic competition . . . The majority of jurisdictions which have considered this issue have concluded that personal injury cases arising out of an athletic event must be predicated on reckless disregard of safety.” Id. at 454 (citations omitted). The recklessness standard was found applicable to injuries sustained by participants in non-contact sports, such as golf, in Gray v. Giroux, 49 Mass.App.Ct. 436, 438-39 (2000). There is no reason to suppose that players who voluntarily associate themselves with a non-professional, sporting competition, such as the coaches game involved in this case, have*an expectation that the organizers or sponsors owe them any greater duty than their fellow players. There is no evidence that any special rules were adopted and were to be enforced by the defendant Association, or that any special representations or assurances were given by the Association to the players about the safety of the field, the equipment, or any of the other conditions. The game resembled, in all material respects, the sort of pick-up games among friends that take place on ball fields and gymnasiums in communities throughout our Commonwealth.
Just as a negligence standard made applicable to participant-to-participant contact occurring during a sporting competition would adversely impact on an individual’s athletic performance, a negligence standard made applicable to a nonprofit association which organizes such competitions, which often includes securing permission to use a municipality’s athletic field, court, pool, or gymnasium and their equipment, would diminish the occasions when such socially beneficial competitions would take place.
Alternatively, the plaintiffs claim that the defendant owed him a duty of care fails in circumstances such as these in which one party is aware of and appreciates a dangerous condition or defect in land to the same extent as the other party. See O’Sullivan v. Shaw, 431 Mass. 201, 205-07 (2000) (explaining that the “open and obvious danger rule" survived the abolition of contributory negligence and the adoption of comparative negligence, and arises in connection with the plaintiffs obligation to establish that the defendant owed him a duty of care). See also Thorson v. Mandell, 402 Mass. 744, 748 (1988) (“There is no duty to warn of dangers obvious to persons of average intelligence”). Here, the record indicates that as a coach of his daughter’s softball team, the plaintiff was aware of the nature of the bases that were used in those youth games. Insofar as those bases may have been unsuitable for use in an adult’s softball game, the plaintiff was in as good a position as the defendant to recognize that danger and to take steps to avoid it by not playing in the game or by arranging to use other types of bases.
ORDER
For the above reasons, the defendant’s motion for Summary Judgment is ALLOWED.

In at least one respect, the statute may limit the reach of the court’s reasoning in Crocker. Under G.L.c. 231, §85V, a nonprofit organization conducting a “sports program” is not immune from liability for negligence arising out of the “care and maintenance of real estate” which It owns, possesses or controls. (Emphasis added.)

In Yakubowicz v. Paramount Pictures Corp., 404 Mass. 624, 629 (1989), the Supreme Judicial Court made this observation: “There can be negligence only where there is a duty to be careful, and whether there is a duty to be careful is a question of law. In determining whether the law ought to provide that a duty of care is owed by one person to another, we look to existing social values and customs, and to appropriate social policy.” (Citations omitted.) Compare Mullins v. Pine Manor College, 389 Mass. 47, 52 (1983) (“Parents, students, and the general community still have a reasonable expectation, fostered in part by colleges themselves, that reasonable care will be exercised to protect resident students from foreseeable harm”).